IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN LLOYD DEAN, III,           )
                                )
         Plaintiff,             )
                                )
    v.                          )   1:20CV378
                                )
KILOLO KIJAKAZI,[1]             )
Commissioner of Social Security,)
                                )
         Defendant.             )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff John Lloyd Dean, III ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI on March 22, 2016, alleging a disability onset date of November 1, 2010. (Tr. at 32, 252-61.)[2] His application was denied initially (Tr.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue the suit by reason of the last sentence of section 205(g) of the Social Security Act § 405(g).
[2] Transcript citations refer to the Sealed Administrative Record [Doc. #11].

at 106-20, 137-40) and upon reconsideration (Tr. at 121-36, 144-48). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 149-51.) On April 4, 2019, Plaintiff, along with his attorney, attended the subsequent video hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 32.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 41), and, on March 18, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-8).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his application date. (Tr. at 34.) The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> autistic disorder and other pervasive developmental disorders[.]

(Tr. at 34.) The ALJ found at step three that none of the impairments, individually or in combination, met or equaled a disability listing. (Tr. at 34-36.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform the full range of work at all exertional levels, but with the following, non-exertional limitations:

> He cannot climb ladders of scaffolds; he frequently can finger bilaterally; he needs to avoid exposure to excessive noise, bright lights, crowds, extreme temperatures, fumes, dusts, odors, gases, poor ventilation, and other pulmonary irritants, and hazards, e.g. unprotected heights and machines with moving

5

> mechanic[al] parts; he can understand remember and carry out simple instructions; he frequently can interact appropriately with supervisors and he occasionally can interact appropriately with coworkers and the public; he can make simple work related decisions; he can tolerate few changes in a routine work setting, however, [he] cannot work a production rate pace; he will miss work once a month; and, he will be off task ten percent of the due to, for example attention and concentration lapses.

(Tr. at 36.) The ALJ found at step four of the analysis that Plaintiff had no past relevant work. (Tr. at 40.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 40-41.)

Plaintiff now contends that, in assessing his RFC, the ALJ failed to properly weigh the opinion evidence, particularly the medical opinion of the consultative psychologist, Dr. J. Craig Hunt. (Pl.'s Br. [Doc. #15] at 3.) For claims like Plaintiff's that are filed before March 27, 2017, ALJs evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c). Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). "Medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (citing 20 C.F.R. § 404.1527(a)(1)). While the regulations mandate that the ALJ evaluate each medical opinion presented to him, generally "more weight is given 'to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" Id. (quoting 20 C.F.R. § 404.1527(c)(1)). Opinions must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length

of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. In this case, in a May 31, 2016 assessment, Dr. Hunt concluded that

> [Plaintiff] appears to have the intellectual capacity to perform simple, routine, repetitive tasks as well as understand, retain, and follow instructions based on his presentation and mental status response. Psychiatric symptoms could have a negative impact on all of the aforementioned. He demonstrated marginal interpersonal behavior and could have moderate to marked difficulty interacting effectively with peers, coworkers, and supervisors due to complications from developmental delay. He demonstrated adequate to marginal concentration, persistence, and pace based on his mental status response. He could have moderate to marked difficulty tolerating the stress associated with day-to-day work activity due to limited coping resources related to neurodevelopmental disorder. Based on his history, he appears capable of conforming to rudimentary social standards and complying with uncomplicated rules and regulations, as well as cooperating with authority figures but may have difficulty with increasing sophistication. His prognosis is guarded given the chronic nature of his neurodevelopmental disorder.

(Tr. at 441.) The ALJ recounted these conclusions, in large part, in his decision. (Tr. at 39-40.) Plaintiff now argues that the ALJ failed to properly evaluate Dr. Hunt's opinion and failed to include in the RFC assessment all of the limitations noted by Dr. Hunt.

In considering Plaintiff's challenge, the Court notes first that the ALJ analyzed Dr. Hunt's opinion at several points during the decision. For example, in analyzing Plaintiff's mental impairments at step three, the ALJ considered, *inter alia*, Plaintiff's functional abilities in "interacting with others" and "concentrating, persisting, or maintaining pace." (Tr. at 35.) With regard to these areas, the ALJ considered and weighed Plaintiff's testimony, Dr. Hunt's opinion, and the medical records, and noted that:

> [d]uring a psychological consultative examination, the examiner did not note problems with speech, communication, or behavior (Ex. 8F [Dr. Hunt's Report], p. 5). Treating sources have not noted a failure to cooperate during office visits nor unusual or unacceptable social behavior. Such sources appear to find the claimant able to communicate clearly or at least they do not note otherwise. They certainly seem to rely on his report of symptoms and complaints.
>
> . . . .
>
> He was noted to need less contact with others (Ex. 8F [Dr. Hunt's Report]). On the other hand, the medical evidence does not reveal instances where the claimant has behaved in a manner that has disrupted his home or family life, and there is no indication such difficulties would interfere with work. Treating sources have not noted significant abnormalities in mental status that would suggest an inability to complete tasks in a timely manner, work at appropriate pace, distract others, or be distracted by others. Treating sources seem to rely on the claimant's presentation of history and symptoms; this would not seem likely if they suspected significant deficits in concentration or mental status. The claimant also seems compliant with medical treatment. One would not expect this if the claimant were unable to concentrate sufficiently to understand and carry out medical instructions.

(Tr. at 35.) Later, in formulating the RFC, the ALJ again recounted Dr. Hunt's Report, noting specifically that Dr. Hunt's mental status examination of Plaintiff was normal, in contrast to the concerns reported by Plaintiff. Specifically, the ALJ noted that:

> When consulting psychologist J. Craig Hunt evaluated the claimant, the claimant reported that he had difficulty keeping track of conversations with people. He reported further that he had anxiety. He reported difficulty remembering and organizing things. His mental status examination, however, was normal. Specifically, his immediate retention and recall appeared within normal limits and his memory was grossly intact. Additionally, his general quality of communication was good; his affect was flexible and appropriate. He endorsed difficulty sleeping and anxiety. He reported that he avoids social situations due to fear of having an anxiety attack. His thought process was logical, sequential, and reality based.

(Tr. at 38.) The ALJ then analyzed the opinion evidence and weighed Dr. Hunt's opinion as follows:

> Consulting psychologist J. Craig Hunt opined that the claimant appeared to have the intellectual capacity to perform simple, routine, repetitive task as well

8

as understand, retain, and follow instructions. He could have moderate to marked difficulty interacting effectively with peers, coworkers, and supervisors. He demonstrated adequate to marginal concentration, persistence, and pace, and moderate to marked difficulty tolerating the stress associated with day-to-day work activity. He was capable of conforming to rudimentary social standards, complying with uncomplicated rules and regulations, and cooperating with authority figures, but he may have difficulty with increased sophistication. I give this opinion some weight. Dr. Hunt is an expert familiar with [the] program and the opinion is generally consistent with the evidence of record.

(Tr. at 39-40.) Thus, this is not a case where the ALJ neglected to consider a report or opinion; instead, it is clear that the ALJ analyzed and engaged meaningfully with Dr. Hunt's report at several points in the decision and in the sequential evaluation process. Given this analysis, it appears that Plaintiff's primary contention is not that the ALJ failed to consider or weigh Dr. Hunt's report, but instead at the ALJ should have weighed the decision differently or formulated a different RFC in light of Dr. Hunt's report.

In the briefing, Plaintiff specifically challenges the ALJ's finding that Plaintiff can frequently interact appropriately with supervisors and occasionally interact appropriately with coworkers and the public. (Pl. Br. at 12-13.) Plaintiff contends that this finding fails to sufficiently account for Dr. Hunt's findings regarding Plaintiff's social abilities, including "moderate to marked difficulty interacting effectively with peers, coworkers, and supervisors due to complications from developmental delay." (Pl. Br. at 11 (quoting Tr. at 441).) In short, Plaintiff asserts that substantial evidence, and the opinion evidence in particular, fails to support of the level of social interaction assessed by the ALJ.

However, in setting this RFC, the ALJ explicitly relied on Dr. Hunt's opinion itself, on the medical evidence and other evidence of record, and on the opinion evidence from the State Agency psychological consultants. First as to Dr. Hunt's opinion, the ALJ specifically

9

Case 1:20-cv-00378-LCB-JEP   Document 19   Filed 08/17/21   Page 9 of 14

noted Dr. Hunt's opinion that Plaintiff "could have moderate to marked difficulty interacting effectively with peers, coworkers, and supervisors," but the ALJ further relied on Dr. Hunt's conclusion that Plaintiff was nevertheless "capable of conforming to rudimentary social standards, complying with uncomplicated rules and regulations, and cooperating with authority figures, but he may have difficulty with increased sophistication." (Tr. at 39-40 (quoting Tr. at 441).) The ALJ also acknowledged Dr. Hunt's opinion that Plaintiff would "need less contact with others," but the ALJ contrasted that with the medical evidence of record as part of the analysis at step three. (Tr. at 35.) The ALJ further considered that medical evidence and Plaintiff's school records in setting the RFC and acknowledged that Plaintiff has "difficulty talking with people and following conversations" but found that he could still perform simple work. (Tr. at 39.) The ALJ recounted, for example, that Plaintiff's treatment records note no behavior or communication problems or difficulties interacting with medical providers during his appointments. (Tr. at 35.) The ALJ also noted that, despite some anticipated difficulties with changing teachers and classmates once in high school, Plaintiff's school records indicated that he did in fact complete high school in a regular classroom setting. (Tr. at 38.) Finally, the ALJ considered not only Dr. Hunt's opinion but also the opinions of the State Agency psychological consultants Keith Noles, Ph.D., and Steven E. Salmony, Ph.D. (Tr. at 39.) At the initial review, Dr. Noles considered the medical records and the opinion of Dr. Hunt and concluded that Plaintiff's mental impairments caused "mild to moderate functional limitations but they do not preclude all work. [Plaintiff] is able to perform SRRTs [simple, routine, repetitive tasks] in low distraction low interaction assignments." (Tr. at 115.) Specifically, as to social limitations, Dr. Noles opined that Plaintiff would be "able to interact

10

with coworkers, general public, and supervisors in a minimum social demand workplace setting." (Tr. at 118.) On reconsideration, Dr. Salmony generally agreed and opined that Plaintiff needed "freedom from distracting stimulation" and was "able to interact with coworkers, general public, and supervisors in a minimum social demand workplace setting." (Tr. at 134.) As with Dr. Hunt's conclusions, the ALJ assigned these opinions "some weight." (Tr. at 39.) In doing so, the ALJ noted that both consultants were experts "familiar with the program" and that their opinions were "generally consistent with the medical evidence of record," but that "the medical evidence supports additional limitations." (Tr. at 39-40.)

The ALJ then concluded that Plaintiff could frequently interact appropriately with supervisors, with is consistent with Dr. Hunt's own opinion that Plaintiff appeared capable of complying with simple rules and regulations and "cooperating with authority figures." (Tr. at 441.) The ALJ further limited Plaintiff to only "occasional" interactions with coworkers and the public, which is consistent with not only Plaintiff's social limitations but also the need to avoid distractions. (Tr. at 35.) Plaintiff presents no evidence that "occasional interaction" with coworkers and members of the public is at odds with the State agency consultants' limitations to "low distraction low interaction assignments" and "minimum social demand workplace settings" (Tr. at 117-18, 133-34).[5] Indeed, when viewing the ALJ's decision as a whole, it is clear that in translating Plaintiff's limitations into vocational terms, the ALJ selected "occasional interaction" with coworkers and members of the public as best reflecting "low

---

[5] The Dictionary of Occupational Titles generally defines "occasionally" as an "activity or condition exists up to 1/3 of the time," "frequently" as "activity or condition exists from 1/3 to 2/3 of the time," and "constantly" as an "activity or condition exists 2/3 or more of the time." See, e.g., DOT 381.687-034, 1991 WL 673262.

11

interaction," "minimum social demand" settings, and the ALJ's reasoning is sufficiently clear to allow for judicial review.

Plaintiff similarly contends that the RFC restrictions relating to concentration, persistence, and pace fall short of the limitations set out in the medical opinion evidence and that, as with the social limitations discussed above, the ALJ failed to adequately account for this discrepancy. However, as set out above, Dr. Hunt opined that "[Plaintiff] appears to have the intellectual capacity to perform simple, routine, repetitive tasks as well as understand, retain, and follow instructions based on his presentation and mental status response. Psychiatric symptoms could have a negative impact on all of the aforementioned. . . . He demonstrated adequate to marginal concentration, persistence, and pace based on his mental status response." (Tr. at 441, 39-40.) Dr. Noles and Salmony similarly noted that Plaintiff was "easily distracted causing difficulty with following instructions and persisting in tasks" and that he "need[ed] reminders and freedom from distracting stimulation." However, despite Plaintiff's moderate limitations in this area, they concluded that Plaintiff was "able to carry out very short and simple instructions." (Tr. at 39, 117, 134.) Notably, in the "Additional Explanation" section of his assessment, Dr. Noles more generally opined that Plaintiff's mental impairments "do not preclude all work" and Plaintiff was "able to perform [simple, routine, repetitive tasks] in low distraction, low interaction assignments." (Tr. at 39, 118.)

In translating these limitations to vocational terms, the ALJ found Plaintiff able to "understand, remember, and carry out simple instructions," but unable to work at a production pace. (Tr. at 36.) Plaintiff was limited to only simple work-related decisions with few changes in routine. (Tr. at 36.) The ALJ further determined that Plaintiff's impairments would cause

12

him to miss work once a month and that "he [would] be off task ten percent of the day due to, for example attention and concentration lapses." (Tr. at 36.) These restrictions address the limitations opined by Dr. Hunt, Dr. Noles, and Dr. Salmony, and Plaintiff has not pointed to any inconsistencies in this regard. Plaintiff nevertheless asserts "harmful error" based on the vocational expert's testimony that being off task fifteen percent of the workday and requiring redirection twice an hour to stay on task would preclude all work. (Pl.'s Br. at 14) (citing Tr. at 103-04). However, Plaintiff points to no evidence supporting such stringent limitations—or any limitations beyond those included in the mental RFC—other than an assertion by Plaintiff's mother that he required redirection to complete housework. (Pl.'s Br. at 14.) No medical source found that Plaintiff would be off task more than ten percent of the workday or required redirection as frequently as Plaintiff now suggests. The ALJ addressed the testimony of Plaintiff's mother at step three and in setting the RFC (Tr. at 35, 37-38), and the ALJ was entitled to rely on the medical opinions of Drs. Hunt, Noles, and Salmony and the record as a whole in formulating RFC limitations consistent with the moderate limitations set forth by these sources.

In sum, the ALJ sufficiently explained his decision and substantial evidence supports the ALJ's determination. Plaintiff essentially asks the Court to reconsider and re-weigh the evidence presented. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]" Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder

could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, explained the reasons for his determination, and that determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion for Judgment on the Pleadings should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #14] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #17] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 17th day of August, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge